IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDRES LUX-RAMOS,                          )

                       )

            Petitioner,                  )

                       )

          v.                         )         1:26-cv-881 (LMB/LRV)

                       )

PAMELA BONDI, et al.,               )

                       )

            Respondents.          )

## ORDER

Petitioner Andres Lux-Ramos ("Lux-Ramos"), a native and citizen of Guatemala, has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since February 4, 2026. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates his due process rights (Count I) and his Eighth Amendment right to protection from cruel and unusual punishment (Count II).

Lux-Ramos is currently detained at the Caroline Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Farmville Detention Center. Lux-Ramos has also sued Robert Guadian, the Field Office Director of the ICE Enforcement and Removal Operations Washington Field Office; Markwayne Mullin, the DHS Secretary; and Pamela Bondi, the former Attorney General (collectively, "the federal

respondents").[1] For the reasons discussed in this Order, the Court finds that Lux-Ramos is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted, and the federal respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

I.

According to his Petition, Lux-Ramos has resided in the United States since 2019. [Dkt. No. 1] at ¶ 17. He lives with his partner and U.S. citizen child, who is two years and ten months old. Id. Lux-Ramos "works regularly during the week and spends his non-working hours caring for his child and supporting his family[,]" as well as attending church with his family. Id. Lux-Ramos has been "involved in a minor traffic incident" prior to his detention, for which he received a citation and paid a $200 fine.[2] Id. at ¶ 16. The court instructed him to obtain a driver's license, and he has been in the process of doing so. Id. On February 4, 2026, Lux-Ramos was driving his personal vehicle to drop off his wife at work. Id. at ¶ 13. His young child was also in the vehicle at the time. See id. While en route, "six ICE vehicles suddenly blocked his path without prior notice and prevented him from continuing." Id. When asked for proof of U.S. citizenship, Lux-Ramos responded that he did not have such documentation and that he was not a U.S. citizen. Id. at ¶ 14. After petitioner provided ICE officers with an identification document, the officers ordered him to step out of the vehicle, placed him in handcuffs, and took him into custody, leaving his wife and child at the scene. Id.

---

[1] Acting Attorney General Todd Blanche and Secretary Markwayne Mullin have automatically replaced their predecessors under Federal Rule of Civil Procedure 25(d).

[2] Specifically, Lux-Ramos "struck the vehicle in front of him" when it was raining. [Dkt. No. 1] at ¶ 16.

Lux-Ramos filed his Petition for Writ of Habeas Corpus on March 31, 2026.  [Dkt. No. 1].  This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1.  In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and requesting that this Court "incorporate the filings in Ceba Cinta into the record of this habeas action."  [Dkt. No. 4] at 1.  Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The central question posed in Lux-Ramos's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a).  As the federal respondents argued in their Ceba Cinta opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." Ceba Cinta v. Noem, et al., 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025).  According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings.  Id.  Therefore, they argue that

3

because Lux-Ramos has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2).  Id.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as numerous district courts throughout the country have found,[3] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction.  See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025).  This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application."  Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025).  The Court has previously addressed several of these points in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and adopts the findings and conclusions in Hasan into this Order.

The Court recognizes that the Fifth and Eighth Circuits have reached contrary conclusions.  Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 2026 WL 819258 (8th Cir. Mar. 25, 2026).  Those decisions are not binding here, CASA de Md., Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020), and the Court is unpersuaded by the Fifth and

---

[3] The overwhelming majority of district courts to consider this issue have held that the detention scheme applicable to noncitizens already residing in the United States is 8 U.S.C. § 1226(a).  See Barco Mercado v. Francis, 2025 WL 3295903, at *4 nn. 22–23 (S.D.N.Y. Nov. 26, 2025) (collecting hundreds of federal decisions holding that § 1226(a) is the applicable detention scheme for noncitizens already present in the United States); see also Kyle Cheney, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, POLITICO, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true (last updated Mar. 10, 2026).

Eighth Circuit's rationales for many of the reasons set forth in Judge Douglas's and Judge Erickson's dissents. Specifically, Judge Douglas correctly explained the federal respondents' interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. Buenrostro-Mendez, 166 F.4th at 511–13 (Douglas, J., dissenting). And Judge Erickson cogently observed that "[a]ll three branches of government" have understood the detention statutes to "maintain the distinction between unadmitted citizens in the interior and those arriving at the border for detention purposes." Avila, 2026 WL 819258, at *7 (Erickson, J., dissenting). "Five presidential administrations, including the first Trump administration, and most immigration judges interpreted § 1225 to apply only to those arriving at the border," "[s]everal courts" interpreted § 1225's reference to noncitizens "seeking admission" "as applying only to those seeking lawful entry at the border," and "Congress never attempted to correct the other two branches." Id. at 8. For these reasons, the Court finds that the Fifth and Eighth Circuits' majority rulings are unpersuasive.

Lux-Ramos has been present in the United States since 2019. [Dkt. No. 1] at ¶ 17. Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Lux-Ramos's detention is governed by § 1226(a). See Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C.

§ 1226(a); 8 C.F.R. § 1236.1(d)(1).  Unless an Immigration Judge makes such a determination, Lux-Ramos's continued detention is unlawful.

III.

For all these reasons, Lux-Ramos's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Lux-Ramos be promptly released from custody, with all his personal property, in order to appear at a bond hearing before an Immigration Judge.  Lux-Ramos must live at a fixed address which he must provide to the federal respondents[4]; and it is further

ORDERED that respondents provide Lux-Ramos with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Lux-Ramos on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that, if Lux-Ramos is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2); and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether Lux-Ramos has been granted bond, and, if his request for bond was denied, the reasons for that denial.

ORDERED that if Lux-Ramos is released on bond, the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Lux-Ramos unless he (1) commits a violation of any federal, state, or local law; (2) fails to comply with the conditions of

---

[4] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his fixed address, petitioner should file that pleading under seal.

6

his release; (3) fails to attend a properly noticed immigration hearing; or (4) is detained pursuant to a valid, final order of removal.

The Clerk is directed to enter judgment in Lux-Ramos's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 8th day of April, 2026.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge